IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK J. WEIS, )
)
    Plaintiff, )
)
    v. ) Civil Action No. 19-32
)
)
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

O R D E R

AND NOW, this 25th day of September, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on May 24, 2019,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 8), filed in the above-captioned matter on April 24, 2019,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

On November 28, 2014, Frederick J. Weis protectively filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Specifically, Plaintiff claimed that he became disabled on August 22, 2014, due to mild cognitive impairment/memory loss/forgetfulness, traumatic brain injury/encephalomalacia/migraine

headaches, Type 1 diabetes, stage III chronic kidney disease, hypertension, hyperkalemia, Vitamin D deficiency, diabetic retinopathy, and obstructive sleep apnea. (R. 78).

After being denied initially on August 13, 2015, Plaintiff sought, and obtained, a hearing on July 27, 2017, before an Administrative Law Judge ("ALJ"). (R. 42-77). In a decision dated November 24, 2017, the ALJ denied Plaintiff's request for benefits. (R. 15-41). The Appeals Council denied Plaintiff's request for review on November 27, 2018. (R. 1-6). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110,

114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate "some 'medically determinable basis for an impairment that prevents him [or her] from engaging in any substantial gainful activity for a statutory twelve-month period.'" Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427 (internal citation omitted)). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must

proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

### III.     The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, August 22, 2014. (R. 20). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had certain severe impairments, particularly, type 1 diabetes mellitus and chronic kidney disease. (R. 20). The ALJ further

concluded that Plaintiff's impairments did not meet any of the Listings that would satisfy Step Three.  (R. 22).

The ALJ next found that Plaintiff retained the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c).  (R. 22).  At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work, so he moved on to Step Five.  (R. 35).  The ALJ then found that, based on Plaintiff's age, education, work experience, and RFC for a full range of medium work, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (R. 35).  Further, the ALJ explained that, based on the foregoing, a finding of "not disabled" was directed by Medical-Vocational Rule 203.07.  (R. 35).  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. 35-36).

## IV. Legal Analysis

Plaintiff raises several arguments as to why he believes that the ALJ erred in finding him to be not disabled.  While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case.  Plaintiff argues, in part, that his RFC is not supported by substantial evidence because the ALJ failed to evaluate properly the limitations caused by his neurocognitive impairment.  More specifically, Plaintiff contends that the ALJ did not provide a full and accurate explanation for his treatment of the medical opinion evidence in the record, including the opinion of consultative psychological examiner Chantal Deines, Psy.D., who found Plaintiff to have various moderate-to-marked, moderate, and mild mental functioning limitations.  (R. 469).  The Court finds that, because the ALJ did in fact fail to address properly the opinion of Dr. Deines, and further failed to provide an adequate explanation for his decision not to include any mental functioning limitations in Plaintiff's RFC, it is not apparent to the Court on what evidence the ALJ relied in formulating the RFC.  Because the Court cannot

determine whether the RFC is supported by substantial evidence, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 404.1545(a)(1). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

After conducting an examination of Plaintiff, Dr. Deines drafted a detailed "Psychiatric and Memory Scale Evaluation" and completed an accompanying "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." (R. 461-68, 469-71). In these documents, Dr. Deines provided an in-depth accounting of Plaintiff's examination and testing, and she opined that Plaintiff had various moderate-to-marked, moderate, and mild limitations. In his decision, however, the ALJ found that Plaintiff could perform the full range of medium work, with no additional limitations whatsoever. (R. 22). Upon review of the ALJ's decision and the record as a whole, the Court finds that the ALJ did not adequately explain his treatment of Dr. Deines'

opinion, nor did he provide an adequate explanation for his decision not to include any mental functioning limitations in Plaintiff's RFC.

As explained, supra, after conducting an examination, Dr. Deines completed a medical source statement indicating that Plaintiff had various moderate-to-marked, moderate, and mild limitations. Specifically, Dr. Deines found that Plaintiff was moderately limited in his ability to understand and remember even simple instructions, and moderately-to-markedly limited in his ability to carry out those simple instructions. (R. 469). Dr. Deines further found that Plaintiff was moderately-to-markedly limited in his ability to understand, remember, and carry out complex instructions (and in his ability to make judgments on complex work-related decisions). (R. 469). Dr. Deines also found that Plaintiff was mildly limited in his ability to make judgments on simple work-related decisions. (R. 469). Moreover, in an effort to expand upon the specific findings of her medical source statement, Dr. Deines clarified that, while Plaintiff "can do many things. He cannot recognize when he has not done something." (R. 469 (emphasis in original)).

In her accompanying written evaluation, Dr. Deines discussed in greater depth her findings and observations regarding Plaintiff's examination. (R. 461-68). For example, Dr. Deines noted that Plaintiff did not appear to experience any particular level of stress during the examination, and that he recalled and understood the instructions during the examination. (R. 464). However, Dr. Deines repeatedly emphasized that Plaintiff's attention and concentration were good for all tasks unless there was even a minor interruption. (R. 462, 464, 465). As Dr. Deines explained, "Problems with concentration were evident on interview and testing. Particularly on testing, when he was focusing on something and there was even a minor interruption, he would lose his thinking and would completely forget what he was doing." (R. 462). Dr. Deines continued, "It was not that he was disoriented and he was aware that he

was doing a task but he could not recall the information he learned in that task if he was interrupted." (R. 462).

Additionally, after testing was conducted, Dr. Deines noted that Plaintiff showed difficulty in auditory memory, particularly on logical memory, and that it was on many of these tests when it was observed that if there was "even a minor outside stimulus such as a sound in the hallway that in a way seemed to break his concentration." (R. 465). Dr. Deines found that Plaintiff's visual memory was in the low average range, but that his visual working memory seemed to be intact. (R. 466). Also, Dr. Deines found that Plaintiff's immediate memory and delayed memory was in the borderline intellectual functioning range. (R. 466). Further, Dr. Deines commented that the challenge generally for Plaintiff is that he "is not aware that he has already done something or not done something so does not ask for prompting from somebody else." (R. 467). Dr. Deines concluded that the results of her evaluation "appear to be consistent with cognitive problems and this may significantly interfere with [Plaintiff's] ability to function on a daily basis." (R. 467).

The ALJ explained that he gave Dr. Deines opinion only "partial weight" in his decision, however. (R. 34). Although it is not clear what portion of Dr. Deines' opinion was given partial weight, since the ALJ did not include any limitations in the RFC (other than limiting Plaintiff to medium work), he evidently rejected all of Dr. Deines' findings of various limitations in carrying out, understanding and remembering simple and complex instructions, and in making judgments on work-related decisions. In explaining his reasoning, the ALJ noted that, although Dr. Deines found that Plaintiff had difficulty with verbal memory and verbal working memory, she also noted that Plaintiff had no difficulty with expressive or receptive language, and that he had no difficulty working with the written instructions for testing. (R. 34). The ALJ also asserted that

8

Dr. Nussbaum, who had evaluated Plaintiff earlier, "suggested strategies to [Plaintiff] for dealing with stress, which he felt was a component of impairment." (R. 34). Finally, the ALJ justified his rejection of Dr. Deines' findings of moderate-to-marked, moderate, and mild limitations by stating that Plaintiff continued to drive, pay bills, attend church, shop and cook. (R. 34).

Upon review, the Court finds that the ALJ did not sufficiently explain why he rejected Dr. Deines' opinion that Plaintiff had the various limitations discussed above. First, the Court notes that the fact that Plaintiff's expressive and receptive language were intact is not inconsistent with a finding that he had limitations in understanding, remembering and carrying out instructions. Additionally, having had no difficulty with the instructions for testing when, as Dr. Deines observed, Plaintiff was under no particular stress, does not show that he would therefore have no difficulty handling instructions at any level of complexity in a more stressful work setting. Furthermore, the ALJ's rationale completely disregards the concern Dr. Deines raised repeatedly in her report, that Plaintiff was unable to remember whether he has done or not done something, and that if any distraction occurred, he seemed to lose his train of thought altogether and was unable to remember what he was doing.

Moreover, the Court notes that the fact that Dr. Nussbaum gave Plaintiff suggestions for dealing with stress seems to lend credence to Plaintiff's complaints, as this supports the contention that Plaintiff's mental limitations affect his ability to function in a work environment. The Court further observes that Plaintiff's activities, as cited by the ALJ, do not obviously undercut Plaintiff's claims since the record shows that Plaintiff accomplishes these activities of daily living largely with the assistance of, or accompanied by, his wife, who helps to keeps him on track. Finally, because the ALJ did not provide sufficient justification for his decision to reject the limitations found by Dr. Deines, he cannot properly claim that the RFC which

contained no additional limitations, is supported by Dr. Deines' opinion without providing additional explanation.

Accordingly, because the ALJ did not provide an adequate explanation of his reasons for rejecting the limitations found in Dr. Deines' opinion, it is not apparent to the Court whether the ALJ's decision in this regard was based on substantial evidence. While the ALJ was certainly not required simply to adopt all of the findings of the opinions in the record, he was required to explain adequately his basis for rejecting them if he chose to do so. See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (explaining that, when conflicting evidence exists, and ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason" (internal citation omitted)); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (stating that an ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects"). Thus, the ALJ's comments concerning the limitations found in the opinion of Dr. Deines do not allow the Court to determine the basis for his decision to give partial weight to that opinion but still reject her particular findings. Remand is therefore required to allow for more focused discussion regarding the ALJ's rationale for rejecting the limitations found by Dr. Deines and for finding that no mental functioning limitations needed to be included in Plaintiff's RFC.

The Court notes that, on remand, the ALJ should, of course, ensure that proper weight also be accorded to the various other opinions and medical evidence presented in the record, he should fully explain his reasoning for accepting or rejecting all the medical opinions, and he should verify that his conclusions at all steps of the sequential evaluation process are adequately explained, in order to eliminate the need for any future remand. Indeed, the Court expresses no opinion as to whether the ALJ's RFC determination regarding Plaintiff's impairments could, in

fact, be supported by the record. It is, instead, the need for further explanation that mandates the remand on this issue.

## V. Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch  
United States District Judge

ecf: Counsel of record